**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LARRY BOYERS,**

      **Petitioner,**

**v.**                          **Case No. 8:15-cv-260-T-36MAP**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Larry Boyers ("Boyers"), a counseled Florida prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. Section 2254 (Doc. 1) and supporting memorandum of law. (Doc. 2) Boyers challenges his conviction for attempted second degree murder of a law enforcement officer with a firearm, which was entered by the Circuit Court for the Twelfth Judicial Circuit for Manatee County, Florida. The Respondent filed a response and supporting exhibits. (Docs. 6, 8) Boyers' counsel filed a reply. (Doc. 10) The Respondent admits the petition is timely. (Doc. 6 at 10) Upon review, Boyers' petition must be denied.

## I. BACKGROUND[1]

On January 17, 2007, deputies were dispatched to Boyers' residence in response to a call of a suicidal man with a gun. Deputy Robinson arrived and spoke with a woman

_____

[1] The summary of the facts derives from Boyers' initial brief on direct appeal and the trial transcript. (Exs. 3, 6)

who was sitting at a table outside the residence.  As the deputy was speaking with a man who had called 911, the woman started causing a disturbance, banging on the carport door and yelling.  Deputy Robinson attempted to get her to move out of harm's way.  Another woman exited the front door and advised that there was a man inside with a lot of guns and that her child was inside.  Deputy Robinson and Detective Deluca heard a shotgun being racked, and seconds later, a shotgun blast.  Deputy Robinson saw a white flash and felt the heat of the blast and the hair move on his head.  Seconds later, another shot was fired, after which the deputy took cover.

SWAT teams responded and extracted a baby from a back bedroom.  Negotiators were in contact with Boyers for approximately three hours.  He told them that he had many guns and that the deputies were going to have to kill him.  Boyers repeatedly told negotiators that he was crazy and drunk, and that he wanted to shoot himself and die.  He stated numerous times that he was going to shoot at and kill the deputies.  He also said that he did not want to kill or hurt anyone.  Eventually, Boyers exited the residence and was taken into custody.  A shotgun, SKS rifle, magazine, live round, five shell casings, two rifles, and a pistol were recovered from the scene.

## II.  PROCEDURAL HISTORY

Boyers was charged with attempted murder in the second degree of a law enforcement officer with a firearm.  Prior to his jury trial, Boyers rejected the State's offer for him to enter a plea to the offense of aggravated assault on a law enforcement officer in return for a 10-year sentence.  At trial, Boyers presented an insanity defense.  The defense relied on Dr. Eddy Regnier, who testified that Boyers was insane at the time of the event.  The State relied on Dr. James McGovern, who testified that Boyers was legally

sane at the time.  Boyers was found guilty as charged and sentenced to a mandatory

minimum prison term of 20 years. (Ex. 5) [2]  The Florida appellate court *per curiam* affirmed

without a written opinion.  *Boyers v. State*, 18 So. 3d 1043 (Fla. 2d DCA 2009) [table].

In a *pro se* amended postconviction motion filed pursuant to Rule 3.850 of the

Florida Rules of Criminal Procedure, Boyers raised claims of ineffective assistance of

counsel, which were summarily denied. (Exs. 10, 11)   The Florida appellate court

reversed and remanded for the trial court to allow Boyers to amend his Rule 3.850 motion

with respect to one ground for relief.   The summary denial of his other grounds was

affirmed without elaboration.   The state court's opinion provides:

> We reverse the order to the extent that it denied the claim raised in
> ground one wherein Mr. Boyers alleged that counsel was ineffective for
> advising him to reject a favorable plea offer.  We affirm the order without
> comment to the extent that it denied the remaining claims alleged in the
> motion.   Mr. Boyers was convicted after jury trial of attempted second-
> degree murder of a law enforcement officer with a firearm and was
> sentenced to a twenty-year mandatory minimum prison sentence under
> section 775.087(2)(a)(2), Florida Statutes (2006).  The transcript of a pretrial
> hearing that was attached to the postconviction court's order establishes
> that the State offered to allow Mr. Boyers to plead to the lesser-included
> offense of aggravated assault on a law enforcement officer with the
> stipulation that he be sentenced to a ten-year mandatory minimum prison
> term under section 775.087(2)(a)(1).  The trial court advised Mr. Boyers that
> it was his last opportunity to accept the State's offer. Mr. Boyers alleged that
> he rejected the plea based on counsel's assurance that if he proceeded to
> trial, Mr. Boyers would ultimately obtain a lesser sentence than the ten-year
> mandatory minimum prison sentence offered by the State, but that he in fact
> received a greater sentence following his conviction at trial.   Mr. Boyers
> alleged further that but for counsel's deficient performance, he would have
> accepted the plea offer. [FN1]
>
> An allegation that counsel was ineffective in advising a defendant to
> reject a plea offer premised on assurances that a trial would produce a more
> favorable result can be the basis of a cognizable rule 3.850 claim where the
> result is ultimately less favorable and the defendant alleges that he would
> have accepted the plea had he been properly advised.  *Morgan v. State*,

---

[2] The Respondent's exhibits (Doc. 8) are referred to by exhibit, volume, and page number as appropriate.

991 So. 2d 835, 841 (Fla. 2008); *Wright v. State*, --- So. 3d ---- (Fla. 2d DCA 2012). However, Mr. Boyers' claim is facially insufficient because he failed to allege a specific deficiency on the part of counsel, such as an assertion that counsel's assessment of the chances of success at trial was unreasonable under the facts and circumstances of the case or that counsel had not investigated or was otherwise unfamiliar with the case. [FN2] *See Morgan*, 991 So. 2d at 841; *Wright*, --- So. 3d ----. Because Mr. Boyers presented a cognizable but facially insufficient claim of ineffective assistance of counsel based on counsel's advice to reject a plea offer, we reverse the postconviction court's order to the extent that it denied the claim presented in ground one of the motion. On remand, the postconviction court shall strike this claim with leave to amend to file a facially sufficient claim within a reasonable time. *See Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007). In all other respects, we affirm the postconviction court's order.

Affirmed in part, reversed in part, and remanded.

[FN] 1 Mr. Boyers' allegation that counsel failed to advise him that, as part of the plea negotiations, the charged offense would be reduced to aggravated assault of a law enforcement officer is conclusively refuted by the transcript of the pretrial hearing. Furthermore, Mr. Boyers' allegation that the psychotropic medications he was taking reduced his ability to make an informed choice regarding the plea offer which he rejected is not a cognizable rule 3.850 claim.

[FN] 2 To state a facially sufficient claim, such an assertion must be factually specific, and a conclusory allegation that counsel's assessment of the chances of success at trial was unreasonable or that counsel failed to properly investigate would not suffice.

*Boyers v. State*, 104 So. 3d 1230, 1231–32 (Fla. 2d DCA 2012).

Boyers filed a counseled second amended Rule 3.850 motion in which he amended his first ground for relief. (Ex. 16) After an evidentiary hearing, the state court denied relief. (Exs. 17, 18) The state appellate court per curiam affirmed without written decision. *Boyers v. State*, 158 So. 3d 573 (Fla. 2d DCA 2014) [table].

### III. GOVERNING LEGAL PRINCIPLES

### A. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. *See* 28 U.S.C. § 2254; *Ledford v.*

*Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016).

Section 2254(d), which creates a highly deferential standard for federal court review of a

state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this

deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The phrase "clearly established Federal law" encompasses only the holdings of

the United States Supreme Court "as of the time of the relevant state-court decision."

*Williams v. Taylor*, 529 U.S. at 412. "The focus . . . is on whether the state court's

application of clearly established federal law is objectively unreasonable, and . . . an

unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685,

694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the

objective reasonableness, not the correctness *per se*, of the state court decision that we

are to decide.").  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. at 693.  Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants --- and federal courts --- from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

Boyers claims that his trial counsel rendered ineffective assistance by failing to advise him reasonably as to the State's plea offer.  Before applying AEDPA deference, the federal habeas court must first identify the last state court decision that evaluated the claim on the merits.  *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (*en banc*), *cert. granted, Wilson v. Sellers*, No. 16-6855, --- S.Ct. ----, 2017 WL 737820 (Feb. 27, 2017).  The Florida appellate court *per curiam* affirmed the denial of Boyers' ground after an evidentiary hearing.  Consistent with the principles set forth

above, the state court decision on review in this proceeding is the Florida appellate court's silent decision, which warrants deference under Section 2254(d)(1).

The Eleventh Circuit has held that where the last adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[ ] there was no reasonable basis for the state court to deny relief.'" *Wilson*, 834 F.3d at 1235 (quoting *Richter*, 562 U.S. at 98). A habeas court must determine what arguments or theories supported or could have supported, the state court's decision, and "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Court." *Richter*, 562 U.S. at 102; *see also Wilson*, 834 F.3d at 1235. The Eleventh Circuit in *Wilson* held that to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a previous opinion as one example of a reasonable application of law or determination of fact; however, the federal habeas court is not limited to assessing the reasoning of the lower court. *Wilson*, 834 F.3d at 1239. Even when the opinion of a lower state court contains flawed reasoning, AEDPA requires that the federal court give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," *Wilson*, 834 F.3d at 1238 (quoting *Renico v. Lett*, 449 U.S. at 733), and presume that it "follow[ed] the law," *Wilson*, 834 F.3d at 1238 (quoting *Woods v. Donald*, 135 U.S. 1372, 1376 (2015)).

In this case, the Court's review is governed by *Wilson*. It does not matter, however, to the result here if review under Section 2254(d) is focused on the reasoning of the state trial court. *See Butts v. GDCP Warden*, 850 F.3d 1201,1204 (11th Cir. 2017) ("Because it does not matter to the result, and to avoid any further complications if the United States

Supreme Court disagrees with our *Wilson* decision, we have decided this appeal on the same basis that the district court did: by using the more state-trial-court focused approach in applying § 2254(d).").

Review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court must presume the state court's factual determinations are correct, unless the petitioner rebuts that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Jones v. Sec'y, Florida Dep't of Corr.*, 834 F.3d 1299, 1311 (11th Cir. 2016). "When considering a determination of a mixed question of law and fact, such as a claim of ineffective assistance of counsel, the statutory presumption of correctness applies to only the underlying factual determinations." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1259 (11th Cir. 2016) (quoting *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 651 (11th Cir. 2014)). Section 2254(d)(2), like Section 2254(d)(1), requires that a federal court afford substantial deference to a state court's factual determinations. If "[r]easonable minds reviewing the record might disagree about" the state court factfinding in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Daniel*, 822 F.3d at 1259 (11th Cir. 2016) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. The Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 1384

(2012).  To establish a claim for ineffective assistance, the petitioner must demonstrate

both prongs of the test established by *Strickland v. Washington*, 466 U.S. 668 (2012).

The performance prong of *Strickland* requires the petitioner show that counsel's

representation during the plea bargaining process fell below an objective standard of

reasonableness.   *Lafler*, 132 S. Ct. at 1384.   In considering a claim of ineffective

assistance, a court "must take care to 'eliminate the distorting effects of hindsight' when

evaluating an attorney's performance, and evaluate the conduct from counsel's

perspective at the time."  *Strickland*, 466 U.S. at 689.

Secondly, the petitioner must show "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.  In the context of a rejected plea agreement or failed plea

bargaining, the prejudice prong requires that the petitioner show:

> but for the ineffective advice of counsel there is a reasonable probability
> that the plea offer would have been presented to the court (i.e., that the
> defendant would have accepted the plea and the prosecution would not
> have withdrawn it in light of intervening circumstances), that the court would
> have accepted its terms, and that the conviction or sentence, or both, under
> the offer's terms would have been less severe than under the judgment and
> sentence that were in fact imposed.

*Lafler*, 132 S. Ct. at 1385.  If the petitioner fails to establish either prong, the reviewing

court need not address the other prong.  *Strickland*, 466 U.S. at 697.

When viewing a *Strickland* claim through the lens of Section 2254(d)'s

unreasonableness standard, the pivotal question is whether the state court's application

of the *Strickland* standard was unreasonable.  *Richter*, 562 U.S. at 101.  Sustaining a

claim of ineffective assistance of counsel is very difficult because "[t]he standards created

by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## IV. DISCUSSION

### Ground One

Boyers contends that he was denied his right to effective assistance of counsel by his trial counsel's failure to advise him reasonably as to the State's plea offer. Boyers alleges that counsel failed to advise him to accept the plea offer. He also asserts that counsel advised him to reject the plea offer while failing to inform him of the extent of the evidence against him and the overwhelming likelihood of conviction. Boyers further alleges that counsel advised him that he would ultimately receive less than a 10-year sentence by going to trial.

In the alternative, Boyers claims that counsel performed deficiently by failing to investigate his case properly and thoroughly. Boyers adds that even assuming that counsel believed he would be successful at trial, no reasonable attorney would reach

such conclusion or offer such advice.  These allegations were raised in Boyers' second

amended Rule 3.850 motion and on postconviction appeal.[3]

The state trial court held as follows:

> At the Evidentiary Hearing, the Defendant and his trial counsel, Mr. Christopher Pratt, Esq., testified.  The Defendant testified that Mr. Pratt notified him of the State's plea offer of 10 years in the Department of Corrections.  However, he claims that he "got the impression" from his attorney that he could win the case and that "the 10-year mandatory ...offered was nothing short of a death sentence."  The Defendant also admits that he was aware that his defense of insanity was a difficult defense to prove, but he asserts that Mr. Pratt made him believe that they could win his case.  The Defendant further claims that because he was on psychotropic medication he relied heavily on counsel's advice, which was to decline the plea offer and proceed.

> On the contrary, Mr. Pratt testified that a reduced charge of Aggravated Assault on a Law Enforcement Officer, with a 10-year sentence was offered to the Defendant.  Mr. Pratt stated that he does not advise clients whether or not to take plea offers because the client is the one doing the time. He testified that he absolutely did not advise the Defendant to reject the plea offer, yet instead told the Defendant that the offer was reasonable given the strength of the State's case, but the ultimate decision was the Defendant's. At most, Mr. Pratt would have advised the Defendant that he had a "colorable defense," but even the insanity defense was weak given the State's evidence against the Defendant.  In addition, Mr. Pratt testified that he was obviously aware of the Defendant's mental health issues given the insanity defense, but that all times the Defendant seemed normal, functional, oriented, and cognizant of the case.

> Counsel for the Defendant argued that it was ineffective assistance of counsel for Mr. Pratt to fail to advise the Defendant affirmatively to accept the State's plea offer of 10 years.  The Court finds that the law does not support this contention; counsel has no obligation to advise a defendant to take a plea offer.  Rather, Mr. Pratt's practice of allowing his client to make the ultimate decision is proper.

> Also, counsel argued that if the Defendant had a full and fair understanding and assessment of the case, that he would have accepted the

---

[3] Boyers also alleges in his habeas memorandum that it was unreasonable for his counsel to fail to advise him of the weakness of his defense of insanity. (Doc. 2 at 10)  Although Boyers In his second amended postconviction motion did not specifically claim that his counsel rendered ineffective assistance by not advising him of the weakness of his defense, the parties reach the claim, which is addressed *infra*.

10-year plea offer. The Court finds from the evidence presented that Mr. Pratt acted reasonably and provided sound, proper advice.

Further, the Court finds Mr. Pratt's testimony credible in that he testified that he would have explained the strengths and weaknesses of the case to the Defendant and explained the plea offer, yet would have left the ultimate decision for the Defendant to make. Also, the Defendant has failed to convince the Court that Mr. Pratt misadvised the Defendant or provided ineffective assistance under the *Strickland* standard of review. The Defendant [sic] motion for his judgment and sentence to be vacated and for the Court to direct the State to re-offer the 10-year plea offer that was previously extended is hereby denied.

(Ex. 18)

## A. *Strickland*'s Performance Prong

The silent affirmance of the state trial court's ruling is entitled to deference under Section 2254(d), and the Court applies the *Richter* test to determine which arguments or theories could have supported the state appellate court's decision. *Wilson*, 834 F.3d at 1235. Boyers must show that there was no reasonable basis for the state court to deny relief on this ground, a burden he fails to meet. The trial court's ruling and the record provide a reasonable basis on which to deny relief on *Strickland*'s performance prong.

### 1. Counsel's alleged failure to advise Boyers to accept the plea offer

Boyers contends that his counsel rendered ineffective assistance by not advising him to accept the State's plea offer.[4] (Doc. 1-1 at 6) Boyers claims that in light of the overwhelming nature of the evidence against him, counsel had an affirmative duty to

---

[4]Boyers does not allege in the instant petition that his counsel performed deficiently by not accurately conveying the terms of the State's plea offer to him. Although Boyers testified at the postconviction hearing that he was unaware that the State's offer was for him to plead guilty to aggravated assault on a law enforcement officer (Ex. 17, T 10), the petition does not raise a claim that his counsel failed to give him accurate advice as to the offense contemplated by the plea offer. Boyers alleges that his trial counsel advised him that in exchange for his guilty plea to aggravated assault on a law enforcement officer, he would receive a mandatory minimum 10-year sentence (Doc. 1-1 at 3), but he also refers to the sentence offered as a 10-year sentence and does not raise a claim that counsel misadvised him as to the prison term offered.

advise him that acceptance of the plea offer was in Boyers' best interest. (Doc. 2 at 5) The testimony of his counsel established that Boyers' decision to reject the plea offer was made with an awareness of the strengths of the State's case and with advice that the State's offer was reasonable under the circumstances.

Christopher Pratt, Boyers' experienced trial counsel,[5] testified that he discussed discovery materials thoroughly with Boyers and advised him that the State had a good case, which included Boyers' taped statements to officers during the stand-off, such as Boyers' statement to the effect, "I know you wear body armor, so I'm going to shoot for the head." (Ex. 17, T 32)  Attorney Pratt informed Boyers that he saw very little, if any, weaknesses in the State's case,[6] and in the course of extensive discussions with Boyers about the State's plea offer, counsel advised Boyers that the offer was reasonable under the circumstances. (Ex. 17, T 32-35)  Boyers' position, however, was that "even 10 years was basically a life sentence for him." (Ex. 17, T 34-35)  Counsel recalled:

> In fact, I think he used the phrase, I'm going to come out horizontal.  He was
> very worried.

(Ex. 17, T 34)  His attorney had significant discussions with Boyers about his concern over the healthcare available in the Department of Corrections for a person of his age.[7]

(Ex. 17, T 34-35)  Although counsel did not recall a discussion about the minimum

---

[5]When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger.  *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (*en banc*).  Boyers' counsel had practiced criminal law for approximately 29 years as of the postconviction hearing, and his experience included approximately six to nine cases involving murder or attempted murder as lead counsel or co-counsel. (Ex. 17, T 30-31)

[6]From counsel's perspective at the time, the only weakness in the State's case was that witnesses had not seen Boyers pull the trigger. (Ex. 17, T 32)

[7]Boyers states that he was 61 years of age at the time. (Doc. 1-1 at 3)

sentence Boyers would accept, counsel recalled what was not acceptable to Boyers, stating:

> I know 10 years was not in his game plan, with or without a minimum mandatory.

(Ex. 17, T 43)

Boyers focuses on the extent of the State's evidence against him in asserting that his trial counsel performed deficiently by not advising him to accept the State's plea offer. (Doc. 1-1 at 6, 7)  Boyers does not, however, suggest that the Supreme Court has held that counsel must make a recommendation as to whether to accept a plea offer in a case where there is strong evidence of guilt and counsel is presented with other factors, such as Boyers' concerns as to the impact of the offered sentence on his life.   Indeed, he acknowledges that the Supreme Court has not held that counsel has an affirmative duty to advise his client as to whether acceptance of a plea offer is in his best interest. (Doc. 10 at 2)   Boyers contends that the state court decision, nonetheless, constitutes an unreasonable application of *Strickland* to his case. (Doc. 10 at 3)

According to Boyers, his counsel had a duty to advise him to accept the plea offer, and he characterizes as "mistaken" the state trial court's legal conclusions that counsel had no such duty and that counsel acted reasonably. (Doc. 2 at 5)  Here, the state court's conclusions constitute a reasonable application of *Strickland*.  Given counsel's testimony that Boyers' position that a 10-year sentence was tantamount to a life sentence for him, it is reasonable to conclude that counsel had no affirmative duty to recommend Boyers' acceptance of the plea offer.

Boyers contends that it was unreasonable for his trial counsel to give him no advice as to which plea to enter in light of his mental health problems, which he asserts were

known to counsel. (Doc. 2 at 8)  His petition does not, however, claim that he was mentally incompetent to proceed when he discussed the State's plea offer with his attorney or when he was tried.   Moreover, his counsel's testimony showed that counsel had no reason to believe Boyers was other than competent, and had counsel believed that Boyers was not aware of what was going on, counsel would have brought the matter to the trial judge's attention. (Ex. 17, T 40, 43, 46)  To the extent that Boyers is claiming that notwithstanding his ability to understand the strengths of the State's case and the reasonableness of the plea offer, counsel should have advised, given his alleged mental issues, that he should take the plea offer, Boyers fails to show that his mental issues required counsel to tell him to take the offer in order for counsel to be reasonably effective.

.        Boyers assails the state trial court's determination that his counsel advised him of strengths and weaknesses of his case.   He asserts that the state court's factual determination is not entitled to deference. (Doc. 2 at 9)  The thrust of his attack on the state court's credibility finding is that his counsel did not advise him as to the strengths and weaknesses of his insanity defense.   As a result, he claims, it cannot be said that counsel advised him as to the strengths and weaknesses of his case "as a whole." According to Boyers, his counsel declined to explain that his defense was exceptionally weak and doomed to fail. (Doc. 2 at 9, 10)

Counsel's testimony showed that Boyers knew "very well" that the case against him was very strong, that counsel had informed him based on his experience that an insanity defense was very difficult, and that at most, he would have informed Boyers that an insanity defense in his case was colorable. (Ex. 17, T 35, 36, 42, 44)  In summarizing counsel's testimony, the state trial court stated, among other things, that trial counsel, at

most, would have advised Boyers that he had a "colorable defense" but even the insanity defense was weak given the State's evidence against Boyers. The state court addressed Boyers' claim and found credible counsel's testimony that counsel would have explained the strengths and weaknesses of the case to Boyers. (Ex. 18, V 2, pgs. 321-22)[8]

To the extent Boyers asserts that counsel did not testify that he told Boyers that his claim of insanity was weak or doomed to fail, he is correct. Nonetheless, the state court's credibility finding can be reasonably interpreted as a finding that counsel had discussed the strengths and weaknesses of the State's case with Boyers, which is a reasonable finding in light of counsel's testimony. As such, deference is afforded to the state court's finding as to counsel's advice concerning the State's case. Deference is also due to the state court's implicit finding that counsel testified credibly that he would have advised Boyers that his insanity defense was colorable. (Ex. 17, T 35 to 36) This finding is also reasonable in light of counsel's testimony.

### 2. Counsel's alleged failure to advise Boyers of the weakness of his insanity defense

Boyers asserts that in his postconviction motion, he raised a claim that his counsel performed deficiently by failing to advise him of the weakness of his insanity defense and of the overwhelming likelihood of conviction, and that acceptance of the plea offer was in his best interest. (Doc. 2 at 4) Although he faulted his counsel for not advising him that the acceptance of the offer was in his best interest, Boyers did not specifically allege in his second amended Rule 3.850 motion that his counsel failed to inform him of the weakness of his insanity defense. (Ex. 16) When he raised the claim on postconviction

---

[8]The order denying Boyers' second amended Rule 3.850 motion bears the volume and page number of the postconviction record on appeal.

appeal, the State did not raise a procedural bar, and Respondent does not raise a procedural default argument to the claim.[9]  In his second amended Rule 3.850 motion, Boyers alleged that counsel failed to advise him, in conjunction with the State's plea offer, that it was all but certain the jury would find that he committed the crime alleged and that by proceeding to trial, he was essentially taking a "long shot" chance that the jury would relieve him of liability based on defense-offered testimony that was in conflict with the testimony of the State's expert. (Ex. 16 at pgs. 8-9)  Boyers also alleged that it was unreasonable for his counsel to fail to advise him to accept the plea offer in light of the overwhelming evidence against him. (Ex. 16 at p. 9)  It appears that the parties have construed his allegations as raising a claim that counsel failed to advise him of the weakness of his defense, and the claim is reached.  Boyers does not demonstrate any deficiency in counsel's advice as to his insanity defense.

Counsel's testimony showed that Boyers was not interested in the plea offer and that they had to come up with a defense and decided on a defense of insanity. (Ex. 17, T 33)  According to Boyers, counsel should have known that his defense was weak to the point that he stood no chance at trial (Doc. 2 at 4; Doc. 10 at 3, 4), and Boyers contends that in light of his mental health problems, it was unreasonable for counsel to fail to advise him of the weakness of his defense. (Doc. 2 at 1)  Boyers does not, however, demonstrate that counsel overlooked a specific weakness in his insanity defense.  Counsel discussed with Boyers that the State was relying on a doctor who would testify contrary to Dr.

[9]In Florida, an appellate court will not consider a claim raised for the first time on appeal. *See Connor v. State*, 979 So. 2d 852, 866 (Fla. 2007) ("This ... issue was not raised at the trial level and was not raised in the 3.851 motion.  Because the issue may not be heard for the first time on appeal of a post-conviction motion, we deny relief on this issue.").

Regnier's testimony, and Boyers did not give counsel any reason to believe that Boyers was unable to understand what counsel discussed with him (Ex. 17, T 37-38, 46)

Boyers contends that his defense was doomed to fail and that it was unreasonable for counsel not to tell him that he was taking a "long shot" chance that the jury would relieve him of liability based on the defense's expert testimony (Doc.1-1 at 7)  Boyers improperly second-guesses counsel's assessment that the insanity defense was colorable in his case.  Reviewing courts must make "every effort ... to eliminate the distorting effects of hindsight" and apply a "heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 689, 691.  Moreover, trial counsel's decisions about which defenses to pursue are decisions of strategy, *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983), and the Court presumes that strategic decisions are reasonable, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*).  The Court must avoid the second-guessing of counsel's assistance, "[as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.  Dr. Regnier's evaluation of Boyers for purposes of an insanity defense provided support for the chosen defense, and given such, there is a reasonable basis on which to find counsel's advice concerning the defense satisfied *Strickland*'s deferential standard.

### 3.  Counsel's alleged advice to reject plea offer and that Boyers would receive less than 10 years in prison by going to trial; counsel's alleged failure to advise him of extent of evidence against him and overwhelming likelihood of conviction

Boyers alleges that counsel told him to reject the State's plea offer "while simultaneously failing to advise" Boyers as to the extent of the evidence against him and overwhelming likelihood of conviction. (Doc. 1-1 at 6)  According to Boyers, his counsel

performed deficiently in his assessment of Boyers' chances of success at trial, and he claims that counsel erroneously advised Boyers that he would receive a sentence of less than 10 years if he proceeded to trial. (Doc. 1-1 at 6)  There is a reasonable basis on which to deny relief on each of Boyers' claims on *Strickland*'s performance prong.

Boyers did not establish that there was any assurance or guarantee by counsel that by going to trial, Boyers would receive a sentence less than the prison term offered by the State.  Boyers did not testify that his counsel had advised him that he would receive a sentence of less than 10 years by going to trial.  Boyers testified that his counsel never gave him affirmative advice to accept the 10-year sentence, stating:

> No, he -- we -- he wanted to go to trial and I didn't want to -- I thought by his advice, by going to trial, I was going to get something a lot better.

(Ex. 17, T 28)  Boyers was asked if it was his testimony that counsel told him not to take the plea offer, and he responded:

> In so many word [sic], yes, that's about what he said.  He said it was tantamount to a death sentence for me at my age to accept a 10-year sentence.  He said that more than once.  He said it a couple [sic] three times, that if I went with this plea deal that I was being offered, that it was just like a death sentence at my age.

(Ex. 17, T 15)  As to his allegation that counsel performed deficiently in his assessment of Boyers' chances of success, Boyers testified that it was his impression that counsel thought that he could win the case for Boyers. (Ex. 17, T 5)  Boyers maintained that "more than a couple" of times, counsel stated "I think we can win this thing." (Ex. 17, T 17)

Counsel testified that he did not advise Boyers to reject the State's plea offer. (Ex. 17, T 35)  Counsel also made clear that he had not given Boyers any assurances as to a successful outcome.  When asked if in the course of the discussions about the plea offer, he had given Boyers an impression that counsel could win at trial, counsel responded:

No.  Well, the only thing I would have said was, since we had filed our notice of intent to rely on insanity and we did have a doctor who was going to say that he was insane at the time of the event, the only thing I would have said was, you have a colorable defense.  That's the most I would have said.  I never would have told him he was going to win because that wasn't particularly strong either.  If you listen to the tape, and the tape is not good for the Defense, he doesn't in any way sound insane.  I don't know what an insane person -- but he sounds very normal, although it does sound like, as the tape gets longer, because the tape is an hour and a half or so, he appears to be getting more and more intoxicated, but he doesn't sound what a normal person would believe to be insane.

So I would have told him that he had a colorable defense.  I would certainly never have said he had a good defense in the insanity aspect of it.

(Ex. 17, T 35-36)

Counsel further testified:

I told him that -- what I always -- the State has a very good case, there are certainly no guarantees of success in this, and I am not making any to you.  And I certainly would never tell him, I think you're going to win.  Ever [sic] have I ever told anybody that.

(Ex. 17, T 36)  Having listened to the testimony and observed the demeanor of Boyers and his trial counsel, the state trial court concluded that Boyers failed to convince the state court that counsel had misadvised Boyers or provided ineffective assistance under *Strickland*.  Boyers did not credibly establish that his counsel advised him to reject the plea or that counsel gave him any impression that there would be a successful outcome at trial.  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Nejad v. Attorney Gen., State of Georgia*, 830 F.3d 1280, 1292 (11th Cir. 2016) (quoting *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011).  Boyers does not overcome the correctness of the state court's credibility determinations by clear and convincing evidence.  Giving deference to the state court's findings, it is reasonable to conclude that Boyers failed to

demonstrate that his counsel advised him to reject the plea or gave him any assurance of success at trial or gave him erroneous advice that he would receive a sentence less than 10 years by going to trial. Accordingly, the state court's rejection of Boyer's claim that his counsel misadvised him constituted a reasonable application of *Strickland*.

Boyers contends that his counsel failed to advise him of the extent of the evidence against him and the overwhelming likelihood of conviction. In view of counsel's testimony which showed that counsel discussed the State's discovery thoroughly with Boyers and advised him that the State had a very good case (Ex. 17, T 36), there is a reasonable argument that counsel's advice as to the extent of the evidence against Boyers satisfied *Strickland*. Given also that Boyers' insanity defense was supported by the defense's psychologist, Boyers fails to show that counsel was constitutionally required to advise him that there was an overwhelming likelihood of conviction in his case.

### 4. Counsel's alleged failure to conduct a proper and thorough investigation prior to trial

Boyers argues, in the alternative, that assuming that his counsel was not aware of the evidence that would be presented against Boyers, his counsel performed deficiently by failing to investigate his case properly and thoroughly before trial, as discovery provided by the State made clear what the evidence would be at trial. (Doc. 1-1 at 7) Counsel's testimony established that he conducted an investigation of the evidence.[10] Although Boyers claims that his counsel was ineffective for not thoroughly and properly investigating his case, he does not lay out any specific line of investigation that his counsel

---

[10] Pursuing the deputy's statement that he felt air pass by his head during the shooting, Boyers' counsel sent an investigator to the scene to place strings through a bullet hole to where bullets struck the roof. Counsel determined through his investigation that the strings were very close to where the officer said he had been at the time. (Ex. 17, T 32, 33)

overlooked. The claim is conclusory, failing to set forth facts which would show an entitlement to relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). The failure-to-investigate component of this ground appears to constitute no more than a claim that counsel should have advised Boyers to accept the State's plea offer based on the extent of the evidence of guilt which was ascertainable from discovery provided by the State. Boyers fails to show that there was any failure on counsel's part to ascertain the extent and import of the State's evidence of Boyers' guilt. Boyers contends that even assuming his counsel believed that he would be successful, no reasonable attorney would reach such conclusion. (Doc. 2 at 10) Counsel's testimony established that counsel did not advise Boyers that counsel thought he would win at trial.

Deference is due to the state court's acceptance of counsel's testimony in concluding that counsel acted reasonably. Counsel's testimony furnishes a reasonable basis on which to conclude that there was no deficiency in counsel's advice as to the evidence, Boyers' defense, or the plea offer. Boyers had the advice needed to make an intelligent decision as to the State's plea offer. Boyers knew what he faced if convicted at trial (Ex. 17, T 45), and he had the benefit of experienced counsel's assessment that the State's case against him was strong and the plea offer was reasonable under the circumstances. Boyers was informed that the insanity defense was colorable in his case, but he was given no guarantee of an outcome by proceeding to trial. Also, given counsel's testimony which showed that Boyers equated a 10-year sentence to a life sentence for him, it is reasonable to conclude that counsel had no affirmative duty to advise Boyers to accept the State's plea offer.

## B.  *Strickland*'s Prejudice Prong

Boyers contends that had his counsel advised him of the overwhelming nature of the evidence against him and that it was in his best interest to accept the State's plea offer, he would have done so and received a substantially lower sentence than the sentence imposed. (Doc. 1-1 at 8)  Although he asserts that there is no prejudice finding on which to defer as the trial court made no ruling on *Strickland*'s prejudice prong (Doc. 10 at 5), the state appellate court's unelaborated affirmance is the state court decision on review.  The state appellate court had a reasonable basis on which to deny relief on the performance prong of *Strickland* without addressing the prejudice prong.  However, even if review under the prejudice prong of *Strickland* is undertaken *de novo*, Boyers fails to meet his burden of *Strickland* prejudice.

Boyers asserts that there is nothing to demonstrate that the State would have withdrawn the offer and the state court would not have accepted it. (Doc. 2 at 11)  The absence of evidence will not support a prejudice finding, as Boyers has the burden of proof to show that the state court would have accepted the terms of the plea offer.  *Lafler*, 132 S. Ct. at 1385.  At the hearing held July 9, 2008, Boyers confirmed his understanding of the State's plea offer for him to enter a plea to aggravated assault on a law enforcement officer in return for a 10-year sentence. (Ex. 16, Ex. A, T 2-3)  The state court asked Boyers if he understood that it was the last day for the state court to commit that it would accept a negotiated plea and that should he wish to enter a plea at a later date, the state court would not commit to acceptance of a negotiated plea.  Boyers was also asked if he understood that after that date, if the State did not agree to his entering a plea to a lesser included offense, he would have to enter a plea "straight up" to the court.  Boyers

confirmed his understanding of the state court's remarks (Ex. 16, Ex. A, T 3), and based on such, it appears that the State would not have withdrawn the offer and the state judge would have accepted it as of that date. Nonetheless, Boyers failed to meet his burden of demonstrating that there was a reasonable probability that he would have accepted the plea offer at that time.

Boyers testified at the state evidentiary hearing that his counsel coached him to tell the state judge that he understood what was stated by the state court because he was under the influence of psychotropic drugs at the time of the hearing. (Ex. 17, T 9-10) Boyers does not, however, allege in his federal petition that he was incompetent to proceed when he rejected the State's plea offer. Moreover, counsel's testimony showed that Boyers never appeared to be incompetent and that counsel did not coach Boyers as to how to respond to the state judge's questions. (Ex. 17, T 42-43) Counsel's testimony further established that Boyers was not interested in the plea offer, that Boyers' position was that a 10-year sentence was tantamount to a life sentence, and that the offered sentence was not an option for Boyers. (Ex. 17, T 32-33, 43) Given also that Boyers did not deny that he had expressed concern to his counsel that he was "going to come out horizontal" (Ex. 17, T 34), Boyers fails to demonstrate that there was any reasonable probability that he would have accepted the State's plea offer had his counsel advised him advised him to accept the plea offer. Boyers fails to meet his burden to show *Strickland* prejudice. Accordingly, Boyers' ground warrants no relief.

Any claims for relief not specifically addressed herein have been determined to be without merit.

## V.  CONCLUSION

For the reasons set forth *supra*, Boyers' petition for the writ of habeas corpus is **DENIED**.  The Clerk is directed to enter a judgment in favor of Respondent and against Boyers and to **CLOSE** this case.

### DENIAL OF A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Boyers is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Boyers "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Boyers cannot make this showing.  Finally, because Boyers is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on June 9, 2017.


*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge


**Copies furnished to:**
**Counsel of record**